IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HOLLY JOHNSON, SABRINA TIMMINS,
CLYNELL MICKEY, and ELMIRA HOBBS,
individually and on behalf of all others similarly
situated,

                           Plaintiffs,

    v.

AMERICAN FAMILY INSURANCE COMPANY
and AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, S.I.,

                     Defendants.

OPINION and ORDER

22-cv-214-jdp

---

Plaintiffs are residents of Kansas, Missouri, Minnesota, and Wisconsin who were involved in automobile accidents and insured under American Family automobile insurance policies issued in those states. They assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing based on defendants' practice of applying a "typical negotiation adjustment" (TNA) to reduce the list price of comparable vehicles used to calculate the actual cash value (ACV) of totaled vehicles. Dkt. 22. Specifically, plaintiffs allege that defendants systematically and fraudulently undervalue total-loss vehicles by using a baseless TNA that does not truly reflect current market conditions. Plaintiffs also seek a declaratory judgment that defendants' conduct is a breach of the insureds' insurance contract and a violation of state law.

Each plaintiff seeks to represent a state-specific class consisting of residents of their home state. This court has jurisdiction over plaintiffs' state law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the amount in controversy exceeds $5,000,000 and at least one plaintiff is a citizen of a state other than Wisconsin, where defendants American

Family Insurance Company and its subsidiary, American Family Mutual Insurance Company, S.I., are headquartered.

Defendants move to dismiss plaintiffs' third amended complaint under Federal Rule of Civil Procedure 12(b)(6),[1] contending that plaintiffs have failed to allege a valid breach or injury, and even if they state valid contract claims, their claims should be dismissed as duplicative, subject to a mandatory appraisal clause, or untimely. Dkt. 24. Plaintiffs agree that plaintiff Mickey's claims (Counts 7-9) are time-barred under Minnesota law, so the court will dismiss those claims without further discussion.

For the reasons explained below, the court will grant defendants' motion in part and deny it in part. The court concludes that plaintiffs Timmins, Johnson, and Hobbs have stated plausible and non-duplicative claims for breach of contract and breach of the implied covenant of good faith and fair dealing, so the motion to dismiss will be denied on those grounds. But plaintiff Johnson's claim for breach of the implied covenant of good faith and fair dealing (Counts 5) is untimely under Missouri law, so that claim will be dismissed. The court also concludes that the appraisal clause in Hobbs's and Johnson's insurance policies is not unconscionable or cost prohibitive, as plaintiffs argue. But the appraisal process will not resolve plaintiffs' claims, so the court will deny defendants' motion to dismiss for plaintiffs' failure to comply with the appraisal clause. Nor is it necessary to delay resolution of plaintiffs' claims while the parties complete the appraisal process.

---

[1] Defendants also cite Rule 12(b)(1) in their motion. Dkt. 24. But the parties' briefs only discuss Rule 12(b)(6). Neither party discusses Rule 12(b)(1) or its applicability to defendants' challenges. *See* Dkts. 25, 29, and 33. Defendants also move for dismissal with prejudice, which implicates Rule 12(b)(6). So the court will deem any challenge under Rule 12(b)(1) to have been abandoned.

ALLEGATIONS OF FACT

In considering a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The court draws the following facts from plaintiffs' third amended complaint, Dkt. 22; the policy and valuation reports attached to the second amended complaint, Dkts. 10-1 to 10-5; and the insurance policies attached to defendants' motion to dismiss, Dkts. 25-1 to 25-4.[2]

Plaintiffs purchased and were issued materially identical automobile insurance policies in their home state from one of the defendants: Sabrina Timmins in Kansas, Holly Johnson in Missouri, and Elmira Hobbs in Wisconsin. The policies require defendants to pay for loss due to direct and accidental physical damage of a covered car, less the deductible. Dkt. 10-1, at §§ II.A.2 and B.[3] Defendants' liability for the loss is the lesser of: (a) the actual cash value (ACV) of the total-loss vehicle; or (b) the amount necessary to repair or replace the damaged vehicle. *Id.*, at § II.E.1. Plaintiffs' policies do not define ACV.

Johnson's and Hobbs's policies, from Missouri and Wisconsin respectively, also set forth an appraisal process under which either American Family or the insured "may demand appraisal of the **loss**." Dkt. 25-1, at 11 (§ II.F.2); Dkt. 25-4, at 24 (§ II.G.2) (emphasis in

---

[2] The court can consider these documents without converting the motion to dismiss into a motion for summary judgment because they are central to plaintiffs' claims and plaintiffs relied on them in their third amended complaint. *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048-49 (7th Cir. 2019) (permitting consideration of materials referenced in previous complaints); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Plaintiffs do not object to considering these documents.

[3] Dkt. 10 is a copy of the relevant portions of the standard Kansas policy, but the parties agree that the terms are identical to those in the other plaintiffs' policies, which defendants have filed with their supporting brief, Dkts. 25-1 to 25-4.

3

originals). If appraisal is demanded, each party will appoint and pay an appraiser, who "will state separately the actual cash value and the amount of **loss**." *Id.* "An award in writing by any two appraisers will determine the amount payable." *Id.* But the "appraisers, or a judge of a court having jurisdiction, will select an umpire to decide any differences." *Id*. Although defendants' standard Kansas policy contains the same appraisal provision, *see* Dkt. 25-2, Timmins's specific policy excludes the standard appraisal clause, *see* Dkt. 25-2, at 18, Kansas Changes § A.3.c.

Between May 27, 2016, and November 3, 2018, plaintiffs each sustained damage to their covered vehicles in automobile accidents. Defendants declared plaintiffs' vehicles to be total losses and offered to pay the ACV. Defendants determined the ACV for plaintiffs' vehicles using third-party companies (Audatex or AudaExplore) with databases of vast numbers of comparable vehicles. These companies use a system called Autosource Market-Driven Valuation to identify the price of comparable vehicles sold or listed for sale online in the relevant market. At defendants' directive, Autosource applies a reduction to the base values of comparable vehicles for typical negotiation, referred to as the TNA.

The valuation reports that plaintiffs received state that the selling price of comparable vehicles "may be substantially less than the asking price," so a "selling price adjustment has been applied to the typical price." Dkts. 10-2 to 10-5, at 3. The TNA applied to the comparable vehicles listed in plaintiffs' valuation reports ranged between 4 and 11%. But the reports do not explain how Audatex or AudaExplaore determined the appropriate TNA to be applied to each comparable vehicle. *Id*.

Plaintiffs do not contest the comparable vehicles chosen or the listed prices of those vehicles. They challenge only the TNA adjustment, alleging that it does not accurately reflect

market conditions and artificially reduces the ACV of the totaled vehicle. According to plaintiffs, defendants purportedly apply the TNA to represent the average difference between the dealer's list price of the comparable vehicle and the amount that the dealer actually would accept. But defendants and their vendor do not communicate with the dealers of the comparable vehicles. And defendants' TNA fails to consider any instances in which a car is sold at a price equal to or greater than the list price.

Plaintiffs allege that given the ubiquity of internet advertising and shopping and the development of sophisticated pricing tools, dealers now price the vehicles to market and do not negotiate off the advertised price. In addition, plaintiffs say that the COVID-19 pandemic and the related supply chain problems have resulted in used cars selling for a premium, typically at sales prices higher than the listed prices.

After plaintiffs filed this lawsuit, defendants invoked their appraisal rights under Johnson's and Hobbs's policies. Neither Johnson nor Hobbs has named an appraiser or otherwise complied with the appraisal clause in their policy.

ANALYSIS

Plaintiffs assert two claims regarding defendants' systematic use of a TNA to reduce the ACV of total-loss vehicles: (1) defendants breached the insurance policy by failing to pay plaintiffs the promised ACV of their total-loss vehicles; and (2) defendants breached the implied covenant of good faith and fair dealing by unreasonably and arbitrarily reducing the amount of their total-loss payments to insureds.[4]

---

[4] Plaintiffs also assert separate "claims" for declaratory judgment in their third amended complaint. But a declaratory judgment is a remedy for an underlying cause of action and not a separate, substantive claim for relief. *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 774 (N.D.

Defendants seek dismissal of these claims with prejudice on four grounds: (1) plaintiffs have failed to allege that defendants breached an obligation under the contract and that plaintiffs were paid less than owed for their total-loss vehicle; and even if plaintiffs do state a claim, (2) Johnson's claims are untimely under Missouri's statute of limitations; (3) plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, and their requests for declaratory relief, are duplicative of the breach of contract claims; and (4) Johnson's Missouri claims and Hobbs's Wisconsin claims are subject to a mandatory appraisal clause.[5] Plaintiffs dispute these contentions and affirmatively assert that the appraisal clauses in the Missouri and Wisconsin policies do not apply to disagreements over the ACV. Plaintiffs also argue that even if the appraisal provision applies, requiring appraisal would be pointless, violate the prohibitive cost doctrine, and be unconscionable. In the alternative, plaintiffs ask the court to stay this action until Johnson and Hobbs complete the appraisal process.

On a motion to dismiss, the question is whether plaintiffs provided defendants with fair notice of their claims and alleged facts plausibly suggesting that they are entitled to relief. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). The court concludes that plaintiffs have met this standard, but it will dismiss Johnson's claim for breach of the implied covenant of good faith and fair dealing as untimely.

## A.  Choice of law

CAFA jurisdiction is a type of diversity jurisdiction, and a court sitting in diversity applies the choice-of-law rules of the forum state to determine which state's substantive law

---

Ill. 2021).

[5] Defendants have not challenged the Kansas claims on this ground because plaintiff Timmins's policy does not contain the appraisal provision.

applies to the plaintiffs' claims. *See Paulsen v. Abbott Labs.*, 39 F.4th 473, 477 (7th Cir. 2022); *Atl. Cas. Ins. Co. v. Garcia*, 878 F.3d 566, 569 (7th Cir. 2017). Under Wisconsin's choice-of-law rules, there is a presumption that the law of the forum state applies unless non-forum contacts are more significant. *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 2006 WI 56, ¶ 40, 290 Wis. 2d 642, 658, 714 N.W.2d 568, 576. This action is brought by insureds located in Kansas, Missouri, and Wisconsin who are challenging payments made under state-specific insurance policies issued in their home state in conjunction with accidents that occurred in their home state. The parties agree that the most significant contacts for plaintiffs' claims are the plaintiffs' home states. Therefore, Kansas law applies to Timmins's claims, Missouri law to Johnson's claims, and Wisconsin law to Hobbs's claims.

## B.  Legal standard

A breach of contract claim in all three relevant states has the same core elements: (1) a contract between the parties that creates obligations from the defendant to the plaintiff; (2) the defendant's failure to fulfill those obligations; and (3) damages flowing from the breach.[6] If the policy language is clear and unambiguous, the contract is enforced according to its plain terms. But ambiguous policy language is construed in favor of the insured.[7] Courts also avoid interpreting contracts in a manner that would leave one or more terms superfluous.[8]

---

[6] *See Reno v. Allstate Prop. & Cas. Ins. Co.*, No. 19-cv-387, 2020 WL 3799162, at *3 (W.D. Wis. July 7, 2020) (applying Wisconsin law); *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013); *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).

[7] *See All. Indem. Co. v. Kerns*, 54 Kan. App. 2d 155, 160, 398 P.3d 198, 203 (2017); *Maher Bros., Inc. v. Quinn Pork LLC*, 512 S.W.3d 851, 855 (Mo. Ct. App. 2017); *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 193, 629 N.W.2d 150, 154.

[8] *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶ 37, 363 Wis. 2d 699, 713, 866 N.W.2d 679, 685; *Belton Chopper 58, LLC v. North Cass Development*, LLC, 496 S.W.3d 529, 533 (Mo. Ct. App. 2016); *Jenkins v. T.S.I. Holdings, Inc.*, 268 Kan. 623, 635, 1 P.3d 891, 899

Stating a claim for breach of the duty of good faith and fair dealing similarly requires a plaintiff to "allege facts that can support a conclusion that the party accused of bad faith has actually denied the benefit of the bargain originally intended by the parties." *Humphrey v. Trans Union LLC*, No. 16-cv-370, 2017 WL 1379405, at *5 (W.D. Wis. Apr. 17, 2017) (applying Wisconsin law). *See also Glenn v. HealthLink HMO, Inc.*, 360 S.W. 3d 866, 877 (Mo. Ct. App. 2012) ("A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the movant the expected benefit of the agreement."); *L. v. L. Co. Bldg. Assocs.*, No. 111140, 2015 WL 2131608, at *8 (Kan. Ct. App. May 1, 2015) ("[B]reach of the implied covenant of good faith and fair dealing only occurs when a party impairs or impedes the other party's ability to perform or denies that party rights and benefits due under the contract.").

## C.  Failure to allege breach and damages

The parties offer contradictory and contorted views of defendants' obligation under the policy. Plaintiffs allege that "[t]his case presents a dispute over ACV, not loss" because it challenges defendants' application of "an unsupported 'typical negotiation adjustment' to . . . comparable vehicles to artificially reduce the amount of its ACV payment to insureds." Dkt. 22, at ¶¶ 9 and 33. Defendants contend that plaintiffs' latest attempt to avoid the appraisal clause in the Missouri and Wisconsin contracts precludes all of their claims.[9] According to defendants, plaintiffs' failure to dispute loss is significant because the policies require

---

(2000).

[9] In their previous three complaints, plaintiffs alleged that "this case does not present a dispute about the loss *or ACV*." Dkt. 1, at ¶ 6; Dkt. 7, at ¶ 33; and Dkt. 10, at ¶ 33 (emphasis added).

defendants to pay for loss, less the deductible, and not the ACV of the total-loss vehicle. They argue that ACV is relevant only as a limit on the amount of loss that they are obligated to pay, and nothing in the policies requires them to calculate ACV in any particular way. Defendants also argue that plaintiffs have not alleged that defendants paid them less than the ACV for their totaled vehicles or specified a particular amount of damages. So defendants say that plaintiffs' claims must be dismissed because they fail to allege any breach of contract, denial of the benefit of the bargain, or damages.

Plaintiffs respond that defendants have missed the point. They argue that there is no question that defendants did not pay the full loss amount because their liability is limited to whichever is less: ACV or the cost to repair or replace the vehicle. In plaintiffs' case, defendants' liability was limited to ACV. So plaintiffs say that defendants were obligated to pay only the ACV and not the loss. Plaintiffs allege that defendants failed to fulfill their contractual obligation under the policies because they paid less than ACV for plaintiffs' vehicles by applying an invalid negotiation adjustment.

The court is not persuaded by either party's interpretation of the policy language. The policies in this case tie loss and ACV together by requiring that the amount of loss not exceed the ACV of the total-loss vehicle. *See Bell v. Amer. Std. Ins. Co. of Ohio*, No. 1:22-cv-1360 (N.D. Ga. Feb. 28, 2023), Dkt. 54-1, at 12 (noting same in discussing applicability of appraisal clause). In other words, ACV *determines* the loss of the total-loss vehicle. *Id.* Defendants concede in their reply brief that plaintiffs could have avoided their pleading error by "assert[ing] that the calculated ACV of their vehicle was too low, thereby resulting in an incorrectly low amount of loss." Dkt. 33, at 4. But plaintiffs clearly allege that defendants "pay insureds and claimants below-market prices for their totaled vehicles," Dkt. 22, at ¶ 7, using an arbitrary process that

significantly reduces total-loss payments, *id.*, at ¶¶ 30-31. These allegations are sufficient to suggest that defendants breached their obligation to pay plaintiffs the ACV for their total loss vehicle and that plaintiffs suffered an injury.

A number of courts throughout the country have reached a similar conclusion regarding automobile insurers' application of an adjustment to reduce the value of comparable vehicles used to determine ACV, even where the plaintiffs did not allege specifically what they believed to be the actual ACV of their total loss vehicles. *See, e.g., Smith v. S. Farm Bureau Cas. Ins. Co.*, 18 F.4th 976, 980-81 (8th Cir. 2021); *Curran v. Progressive Direct Ins. Co.*, No. 22-cv-00878 (D. Col. Mar. 21, 2023), Dkt. 50, at 7-8; *Holmes v. Progressive Universal Ins. Co.*, No. 22-cv-894, 2023 WL 130477, at *8 (N.D. Ill. Jan. 9, 2023); *Watson v. Progressive Direct Ins. Co.*, No. 22-cv-203, 2022 WL 18027628, at *8 (E.D. Ky. Dec. 30, 2022); *Grady v. Progressive Direct Ins. Co.*, __ F. Supp. 3d __, No. 22-cv-866, 2022 WL 18494898, at *6 (D. Minn. Nov. 30, 2022); *Volino v. Progressive Cas. Ins. Co.*, No. 21-cv-6243, 2022 WL 5242894, at *2 (S.D.N.Y. Oct. 6, 2022); *Williams v. Progressive Direct Ins. Co.*, __ F. Supp. 3d __, No. 22-cv-510, 2022 WL 4482726, at *10 (D. Del. Sept. 27, 2022) (denying similar motion to dismiss because "allegations [that] application of the projected sold adjustment to reduce the value of comparable cars, which in turn reduces the base value used to calculate the market value of the total loss car plausibly states a claim for breach of contract."); *Petri v. Drive New Jersey Ins. Co.*, No. 21-cv-20510, 2022 WL 4483437, at *5-6 (D.N.J. Sept. 26, 2022) ("Defendants were obligated to pay a yet-to-be-determined amount of money but paid less than that amount. These allegations are about as close to a contract law casebook's definition of breach as one could get."); *Chadwick v. State Farm Mut. Auto. Ins.*, No. 21-cv-1161, 2022 U.S. Dist. LEXIS 117926 (E.D. Ark. July 5, 2022); *Clippinger v. State Farm Mut. Auto. Ins.*, No. 20-cv-02482,

10

2020 WL 6750357, at *6-7 (W.D. Tenn. Nov. 17, 2020); *Zuern v. IDS Prop. Cas. Ins.*, No. 19-cv-6235, 2020 WL 2114502, *4-5 (W.D. Wash. May 4, 2020).

Contrary to defendants' assertions, plaintiffs need not allege how much their cars were worth or how much they believe they are owed at this stage of the litigation. *See Grady*, 2022 WL 18494898, at *6 (rejecting defendant's argument that plaintiff "must allege how much she thinks her car was worth and that Progressive Direct paid her less than that amount"); *Watson*, 2022 WL 18027628, at *8 (same). Those numbers "will become more precise through the discovery process." *Petri*, 2022 WL 4483437, at *5. Accordingly, plaintiffs' allegations state a plausible claim for relief.

### D. Missouri statute of limitations

The parties dispute whether Johnson's claims are governed by a five or ten-year statute of limitations. Missouri applies a five-year statute of limitations to "[a]ll actions upon contracts, obligations or liabilities, express or implied." R.S. Mo. § 516.120(1). But "an action upon any writing, whether sealed or unsealed, for the payment of money or property" must be brought within 10 years. R.S. Mo. § 516.110(1). The Missouri Supreme Court has explained that the exception in § 516.110(1) "applies to every breach of contract action in which the plaintiff seeks a judgment from the defendant for payment of money the defendant agreed to pay in a written contract." *Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 183 (Mo. 2014) (quoting *Hughes Dev. Co. v. Omega Realty Co.*, 951 S.W.2d 615, 617 (Mo. 1997)).

Johnson's vehicle was deemed a total loss and her insurance claim was valued and paid by June 17, 2016. But she did not file her lawsuit until April 13, 2022, almost six years after her claim arose. Defendants contend that Johnson's claims must be dismissed with prejudice

as untimely under the five-year statute of limitations in § 516.120(1).[10] Defendants are partially correct.

Johnson alleges that defendants breached their written promise to pay the ACV of her total-loss vehicle and seeks money damages. So the 10-year statute of limitations in § 516.110(1) applies to Johnson's breach of contract claim. *See Brown v. CRST Malone, Inc.*, No. 11-cv-1527, 2012 WL 4711450, at *7 n.2 (E.D. Mo. Oct. 3, 2012), *aff'd*, 739 F.3d 384 (8th Cir. 2014) ("Under Mo. Rev. Stat. § 516.110(1), the statute of limitations governing actions against an insurance company to recover under an insurance policy is ten years.").

But Johnson's claim for the breach of the implied covenant of good faith and fair dealing is subject to the general five-year statute of limitation because that claim does not seek money that defendants agreed to pay in a written contract. As defendants argue, a claim based on an *implied* obligation is by definition not based on any written term in the insurance policy. *See Rolwing*, 437 S.W.3d at 182-83 ("Section 516.110 does not apply to an action alleging a breach of a written contract and that seeks money damages . . . that is not based on a promise in the contract."). Johnson does not cite any contrary authority or develop a meaningful argument that her implied covenant claim should be subject to the longer statute of limitations period.

Because Johnson's claim for breach of the implied covenant of good faith and fair dealing is barred by the Missouri statute of limitations, the court will grant defendants' motion to dismiss it.

---

[10] Defendants also seek to dismiss Johnson's requests for declaratory judgment as untimely. But a declaratory judgment is an alternative remedy based on an underlying cause of action and not a separate claim for relief. So it is too early at this stage to decide what remedy may be appropriate with respect to Johnson's timely claim. The distinction between plaintiffs' contract claims and declaratory judgment action is discussed further below.

### E.  Covenant of good faith and fair dealing and declaratory judgment claims

Defendants move to dismiss Timmins's and Hobbs's remaining claims for the breach of the covenant of good faith and fair dealing and requests for declaratory judgment as duplicative of the breach of contract claims.

#### 1.  Implied covenant

Defendants argue that a plaintiff may not simply repackage a breach of an express contractual provision as a breach of the implied duty of good faith. *See Willert v. Andre*, No. 17-cv-496, 2018 WL 3637951, at *9 (W.D. Wis. July 30, 2018); *Middleton-Cross Plains Area Sch. Dist. v. FieldTurf USA, Inc.*, No. 16-cv-278, 2016 WL 6459831, at *2 (W.D. Wis. Oct. 31, 2016). Plaintiffs respond that the duty of good faith and fair dealing is implied in every contract and requires defendants to exercise their discretionary rights under the insurance policies in a reasonable manner. *See Salek v. Reload, Inc.*, No. 11-cv-2585, 2014 U.S. Dist. LEXIS 141530, at *37-39 (D. Kan. Sept. 30, 2014); *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶ 27, 348 Wis. 2d 360, 842 N.W.2d 240, 250-51. They argue that to the extent that the policies in this case give defendants discretion to calculate ACV, defendants exercised that discretion unreasonably and capriciously by applying a TNA to the value of comparable vehicles. Plaintiffs also allege that defendants know that the TNA is false.

Plaintiffs' allegations raise questions about whether defendants acted reasonably and in good faith. So Timmins and Hobbs sufficiently plead an alternative theory for their breach of contract claim. Because Rule 8(d) allows pleading in the alternative, plaintiffs may pursue implied covenant claims along with their breach of express contract claims.

## 2.   Declaratory judgment

Defendants contend that plaintiffs have failed to allege a key component of a declaratory judgment action: lack of an adequate legal remedy. *See State Ass'n of Chiropractors v. Anderson*, 186 Kan. 130, 136, 348 P.2d 1042, 1047 (1960); *Ware v. Schoone*, 191 Wis. 2d 359, 530 N.W.2d 69 (Ct. App. 1995), *aff'd*, 199 Wis. 2d 712, 546 N.W.2d 142 (1996) ("Because [plaintiff] has an adequate remedy at law . . . the trial court properly dismissed the causes of action in equity."). They argue that either they owe plaintiffs money—which is the definition of an adequate remedy at law—or owe them nothing, in which case plaintiffs have no claims, declaratory or otherwise.

But as explained above, declaratory judgments are not independent causes of action; they are a form of remedy for an underlying cause of action. *See Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010) ("[A] federal court applying the Declaratory Judgment Act must evaluate the parties' rights based on the same body of substantive law that would apply in a conventional action"). It is premature at this stage for the court to determine the appropriate remedy. So the court will not dismiss the requests for declaratory judgment.

## F.   Validity of Missouri and Wisconsin appraisal provisions

Defendants contend that the Missouri and Wisconsin plaintiffs, Johnson and Hobbs, must first submit their dispute over the valuation of their vehicles to the appraisal process, as expressly required under their policies. Missouri and Wisconsin courts have treated similar appraisal provisions as mandatory once invoked.[11] Plaintiffs argue that the appraisal clause in

---

[11] *See Olga Despotis Tr. v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1060 (8th Cir. 2017) (appraisal provision in insurance policy "must be complied with before a right of action accrues to the insured"); *Tavern Apartments Ltd. v. State Farm Fire & Cas. Co.*, No. 17-cv-83, 2017 WL 4778580, at *3 (E.D. Mo. Oct. 23, 2017); *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 34, 319 Wis. 2d 52, 68, 768 N.W.2d 596, 604; *Lance v. Royal Ins. Co.*, 259 S.W.

their policies applies only to disputes over loss and not ACV. But as discussed above, these terms are tied together in the policy, with ACV determining the amount of the loss. In fact, the appraisal provision expressly states that after a party demands appraisal, each party will appoint an appraiser who "will state separately the actual cash value and the amount of the loss" which "will determine the amount payable." Dkt. 10-1 at II(G)(2). Here, defendants have demanded appraisal, so it appears that plaintiffs have a contractual duty to complete the appraisal process.

Plaintiffs further contend that even if the appraisal provision covers their claims, enforcing it would be cost prohibitive and unconscionable. The court is not persuaded by plaintiffs' arguments for the reasons below.

### 1. Prohibitive cost doctrine

Plaintiffs contend that forcing insureds to spend upwards of $1,000 on appraisal would violate the prohibitive cost doctrine because the cost of appraisal would be greater than any damages they could recover. But as plaintiffs acknowledge, the cases they cite in support of their argument all address the doctrine in the context of arbitration, not appraisal.[12] *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) ("[T]he existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum."); *Whitney v. Alltel Communs., Inc.*, 173 S.W.3d 300, 314 (Mo. Ct. App. W.D. 2005) (declining to compel arbitration because "costs would be

---

535, 535 (Mo. Ct. App. 1924).

[12] Plaintiffs also concede that the prohibitive costs doctrine is inapplicable if appraisal costs are taxable under 28 U.S.C. § 1920, equity, or local rule. But plaintiffs admit that they have been unable to find authority on this point, so the court will not address the issue.

so prohibitively expensive" compared to claimed damages); *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 467-68 (Wash. App. 2002) (finding cost of arbitration prohibitive where plaintiff was poverty-stricken and arbitration cost several thousand dollars); *Phillips v. Assocs. Home Equity Servs.*, 179 F. Supp. 2d 840 (N.D. Ill. 2001) (finding plaintiff could not afford arbitration costs which were at least twelve times what it currently costs to file a case in federal court). Plaintiffs have not cited any authority for extending this doctrine to the enforcement of an appraisal provision in an insurance contract. They also do not allege that they cannot afford the cost of appraisal or that appraisal is more expensive than litigation.

### 2. Unconscionability

Plaintiffs further argue that the appraisal provision is substantively unconscionable for the following reasons:

1. Defendants can invoke the appraisal clause at their whim to force insureds to share the costs of determining the policy benefits.

2. The amount of damages to which the insureds are entitled is approximately what it would cost the insured in appraisal.

3. The appraisal clause is applicable even if there is not yet a dispute between the parties.

Several courts have rejected similar unconscionability arguments. *See, e.g., Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-2482, 2021 WL 4887984, at *7 (W.D. Tenn. Oct. 19, 2021) (rejecting argument that appraisal provision in an automobile insurance contract was "substantively unconscionable" and "cost-prohibitive" at time parties entered contract); *Bryant v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-04669, 2021 U.S. Dist. LEXIS 36036, at *12-14 (N.D. Cal. Jan. 13, 2021) (holding appraisal provision "applies equally, with the same obligations, to either side" and was not prohibitively expensive at time parties agreed to it); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365, 2008 WL 2620900, at *9 (N.D. Cal.

June 30, 2008) (appraisal provisions not unconscionable even if additional cost of appraisal "exceed[s] the difference between the settlement offer and the actual cash value of the lost vehicle"); *Bettor v. Esurance Prop. & Cas. Ins. Co.*, No. 18-cv-61860, 2019 WL 2245564, at *5 (S.D. Fla. Mar. 28, 2019) (The fact "that an alternative dispute resolution provision may cost a litigant money does not render the provision unconscionable."). Plaintiffs fail to cite any case in which a similar appraisal clause has been found unconscionable.

Here, the appraisal provision is not one-sided or unfair. Either party may request an appraisal, both parties choose an appraiser at their own cost, and they share the cost of an independent umpire, if necessary. Further, as defendants note, the fact that insureds seek to enforce appraisal clauses against insurers indicates that the clause does not only benefit insurers. *E.g., McCoy v. Am. Fam. Mut. Ins. Co.*, 189 F. Supp. 3d 896 (D. Minn. 2016) (granting plaintiffs' motion seeking specific performance of policy appraisal provision); *Higgins v. State Farm Fire and Casualty Co.*, No. 22-cv-198, 2022 WL 4016972, at *1 (E.D. Wis. Sept. 2, 2022) (granting insured's motion to compel appraisal); *Taven Apartments Ltd. P'ship v. State Farm Fire & Cas. Co.*, No. 17-cv-83, 2017 WL 4778580, at *3 (E.D. Mo. Oct. 23, 2017) (same); *Underwriters at Lloyd's of London, Syndicate 4242 v. Tarantino Properties, Inc.*, No. 12-cv-167, 2012 WL 3835385, at *2 (W.D. Mo. Sept. 4, 2012) (same). In some cases, the provision may dissuade an insured from disputing the ACV valuation through the appraisal process, but the provision cannot be said to lack a "modicum of bilaterality." *Garner*, 2008 WL 2620900, at *9. So the appraisal clause in plaintiffs' policies is not unconscionable.

But the fact that the appraisal clause is valid, and plaintiffs Johnson and Hobbs may have a contractual duty to complete the appraisal process that defendants invoked, doesn't mean that plaintiffs have failed to state a claim in this case. The relevant question is what

effect, if any, does the appraisal provision have on Hobbs's breach of contract and implied

covenant claims and Johnson's breach of contract claim.

## G. Effect of the appraisal requirement on plaintiffs' claims

Defendants correctly point out that a significant number of courts across the country

have ordered appraisal where it was demanded by an insurance company in response to a

plaintiff's challenge to a TNA-type reduction in calculating ACV.[13] Some of those courts have

stayed cases pending appraisal,[14] while others have simply dismissed the case without prejudice.

But this court is not persuaded that either dismissal or a stay is warranted in this case.

Defendants cite three cases in their reply brief to support their contention that until

ACV is determined through the appraisal process, and defendants fail to pay it, there can be

no breach of contract or injury. *See Bryant*, 2021 U.S. Dist. LEXIS 36036, at *18-19 ("[U]nless

and until the appraisal process is completed, it is not clear whether or not [the plaintiff] has

been injured or incurred any damages."); *Bettor*, 2019 WL 2245564, at *4-5 (insured's

participation in appraisal process demanded by insurer was condition precedent to filing

lawsuit and failure to participate compelled dismissal); *Pavlina v. Safeco Ins. Co. of Am.*, No. 12-

cv-534, 2012 WL 5412796, at *6 (N.D. Cal. Nov. 6, 2012) (appraisal provision barred plaintiff

"from pursuing this action against the Defendant while the dispute over the actual cash value

---

[13] *E.g.*, *Cudd v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-217, 2022 WL 16541166, at *4 (M.D. Ga. Oct. 28, 2022); *Wiggins v. State Farm Mut. Auto Ins. Co.*, No. 21-cv-3803, 2022 U.S. Dist. LEXIS 112081 (D.S.C. June 23, 2022); *Clippinger*, 2021 WL 4887984, at *12; *Bryant*, 2021 U.S. Dist. LEXIS 36036, at *18-19; *Phillips v. Garrison Prop. & Cas.*, No. 19-cv-1727, 2020 WL 3118415, at *19 (N.D. Ala. May 12, 2020); *Bettor*, 2019 WL 2245564, at *5.

[14] *See Clippinger*, 2021 WL 4887984, at *12 ("When Plaintiff sued Defendant, neither party had properly invoked the appraisal provision. Only after Plaintiff sued did Defendant invoke the appraisal provision, not before. As a result, there is no evidence that Plaintiff's failure to seek an appraisal before suing violated this provision of the Policy."); *Bell*, Dkt. 54-1, at 17.

of the Vehicle has not been addressed through appraisal"). But the insurance policy in those cases all stated that full compliance with the policy was a prerequisite for filing a lawsuit. There is no such provision in this case. In addition, nothing Johnson's or Hobbs's policies required them to demand appraisal to determine ACV, and defendants did not invoke the appraisal process until after plaintiffs filed their lawsuit. *See Cudd*, 2022 WL 16541166, at *3 ("[H]ad the parties not agreed as to the consequences of failing to comply with the policy conditions, Cudd's failure to comply with this condition perhaps could have been excused.").

More to the point, determining the correct ACV amount for plaintiffs' vehicles will not resolve plaintiffs' claims that defendants improperly calculated ACV in the first place. Plaintiffs allege that defendants intentionally lowballed insureds by applying a baseless reduction to the value of the comparable vehicles used to calculate the ACV. Ordering appraisal would not resolve the underlying dispute about whether such conduct amounts to breach of the express or implied contract between the parties. *See Stanikzy v. Progressive Direct Ins. Co.*, No. 20-cv-118, 2020 U.S. Dist. LEXIS 94545, at *5 (W.D. Wash. May 29, 2020) ("This is not a dispute over whether the calculated average of the comp vehicles' [projected sold adjustments] should be some [other] amount. . . . Instead, the gravamen of this lawsuit is whether Progressive may legally make the adjustments at all."). Defendants attempt to distinguish *Stanikzy* on the ground that the plaintiffs in that case were alleging that the adjustment ran afoul of certain technical administrative code provisions requiring adjusts to be itemized and verifiable. But the same reasoning applies in this case with respect to defendants' alleged express or implied duty under the insurance policy.

In sum, defendants have failed to show that plaintiffs' claims must be dismissed even though Johnson and Hobbs may have a contractual duty to complete the appraisal process.

19

Further, the court concludes that staying this case pending the outcome of appraisal is unnecessary. The appraisal process would not obviate the need for litigation. The court understands plaintiffs' concern that they will incur significant costs in proceeding with appraisal, but that issue will be a damages question in the event a breach is proven.

ORDER

IT IS ORDERED that defendants' motion to dismiss, Dkt. 24, is GRANTED IN PART and DENIED IN PART:

1. Defendants' motion to dismiss plaintiff Clynell Mickey's claims (Counts 7-9) and plaintiff Holly Johnson's claim for the breach of the covenant of good faith and fair dealing (Count 5) is GRANTED because those claims are barred by the applicable statutes of limitations.

2. Defendants' motion to dismiss the remaining claims filed by plaintiffs Johnson, Timmins, and Hobbs is DENIED.

Entered March 31, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge